UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PENNY McPHAUL, LAWRENCE KELSO, and CAMERON WILSON, <br><br> Plaintiffs, <br><br> v. <br><br> INSIGHT MANAGEMENT PARTNERS, LLC, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:19-cv-1392 <br> ) <br> ) <br> ) <br> ) <br> ) |

**ORDER ON PENNY McPHAUL AND CAMERON WILSON'S MOTIONS FOR ATTORNEY FEES AND COSTS**
**(Docs. 19, 25)**

Plaintiffs Penny McPhaul, Lawrence Kelso, and Cameron Wilson sued Defendant Insight Management Partners, LLC in October 2019, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (Doc. 1.) Plaintiffs Ms. Wilson and Ms. McPhaul accepted Rule 68 offers of judgment (*see* Docs. 15, 22), and have moved for attorney's fees and costs. (Docs. 19, 25.) The exact amount of fees and costs owed to Ms. Wilson and Ms. McPhaul is now at issue.

## Analysis

As a preliminary matter, the court notes that Defendant has not filed a response to Ms. McPhaul's Motion for Attorney Fees. (Doc. 25.) Although the time for filing such a response has passed, Ms. McPhaul's motion adopts the legal arguments and support set forth in Ms. Wilson's Motion for Attorney Fees, to which Defendant has responded. (*See id.* at 1; Doc. 27.) Accordingly, the court treats Defendant's response in opposition to Ms. Wilson's Motion for Attorney Fees as a response to Ms. McPhaul's nearly identical motion.

The terms of the judgment for both Ms. McPhaul and Ms. Wilson provide for "[r]easonable attorney's fees and taxable costs in connection with the action . . . in and among as agreed by counsel for the parties, or, if they are unable to agree, as determined by the Court upon motion." (Doc. 15-1 at 2.) The FDCPA awards successful plaintiffs with "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3).

Plaintiffs' counsel originally sought an award of $3,236 for time charges and $460 for costs (filing fees and service expenses) in Ms. Wilson's case only. (Doc. 19-2.) Because there were three Plaintiffs, most charges reflected work in common on all three cases. Charges related only to the other two Plaintiffs' cases were not included. When Ms. McPhaul also settled her case, Plaintiffs' counsel added $317 in time charges related to her case only. The time charges do not include time spent specifically on Lawrence Kelso's case—the remaining Plaintiff who has not settled. The total claim for attorney's fees is $3,553 plus undisputed costs of $400 (filing fee) and $60 (cost of service). To these the court adds the additional costs of $1,080 for the current motion practice over attorney's fees. (Doc. 28 at 12.) These additional fees bring the total claim for attorney's fees to $5,093.

Defendant makes five arguments in opposition to the motions for attorney fees. (Doc. 27.) First, Defendant argues Attorney Hilton's $300 per hour billing rate is unreasonable because he has only been practicing law for five years. (*Id.* ¶ 6.) Second, Defendant argues that Ms. Wilson's attorney's fees should be prorated by one-third to account for the split time spent on each of the three Plaintiffs' cases. (*Id.* ¶¶ 4, 15.) Third, Defendant seeks to exclude fees incurred for intraoffice communications and clerical tasks. (*Id.* ¶¶ 10–11.) Fourth, Defendant argues Plaintiffs' counsel should not be awarded fees for work connected to the Motion to

Compel, which was denied for failure to follow the local rules. (*Id.* ¶ 12.) Last, Defendant argues Plaintiffs' counsel should not be awarded "fees for fighting over his fees." (*Id.* ¶ 13.)

In response, Plaintiffs argue the $300 per hour billing rate is reasonable, citing prior findings of magistrate and district judges in the Western District of New York to this effect. (Doc. 28 at 3–4.) Further, Plaintiffs contend that Defendant is estopped from contesting Plaintiffs' counsel's rates because Defendant failed to respond to Plaintiffs' Motion to Compel requesting admissions of reasonable billing rates for attorneys and staff. (*Id.* at 2 (citing Docs. 12, 12-1, and 12-12).) Plaintiffs also argue that prorating attorney's fees among Plaintiffs is illogical, and that Defendant's objections to time entries are not justified. (Doc. 28 at 2, 6–7.) Finally, Plaintiffs contend that Defendant owes attorney's fees for time spent litigating fees. (*Id.* at 8–9.) The court addresses each of these arguments below in the context of the applicable standard for calculating a reasonable fee.

## I.    Calculating Reasonable Legal Fees Under the Fair Debt Collection Practices Act

The plain language of the FDCPA authorizes an award of reasonable attorney's fees and costs as determined by the court. *See* 15 U.S.C. § 1692k(a)(3); *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 95 (2d Cir. 2008) ("The FDCPA provides for fee-shifting as a matter of course *to* successful plaintiffs . . . ."); *Woods v. Sieger, Ross & Aguire, LLC*, No. 11 Civ. 5698 (JFK), 2012 WL 1811628, at *5 (S.D.N.Y. May 18, 2012) (awarding reasonable fees and costs for a successful FDCPA claim). Courts in the Second Circuit charged with calculating reasonable attorney's fees for FDCPA actions will consider two methodologies in tandem—the "lodestar approach" and the 12-factor test set forth in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182 (2d Cir. 2008). *See e.g.*, *De La Paz v. Rubin & Rothman, LLC*, No. 11 Civ. 9625(ER), 2013 WL 6184425, at *3 (S.D.N.Y. Nov. 25, 2013)

3

(adopting the lodestar methodology and the factors set forth in *Arbor Hill*); *Douyon v. NY Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 336–37 (E.D.N.Y. 2014) (same). Generally, the "lodestar" creates a presumptively reasonable fee, guided by the *Arbor Hill* factors. *See Azzara v. Nat'l Credit Adjusters, LLC*, No. 1:16-cv-01213, 2017 WL 2628875, at *3–4 (N.D.N.Y. June 19, 2017). Thus there is a "strong presumption" that the lodestar figure is reasonable, but this presumption "may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may be properly considered in determining a reasonable fee." *Ceglia v. Zuckerberg*, No. 10-CV-00569A(F), 2012 WL 503810, at *4 n. 6 (W.D.N.Y. Feb. 14, 2012) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010)).

The "lodestar approach" multiples the number of hours spent by attorneys on the case by the reasonable hourly rate for the time of the attorneys, with the ultimate goal being "to compensate the attorney for the reasonable value of services benefiting the unrepresented claimant." *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 166–67 (3d Cir. 1973). The lodestar approach "looks to 'the prevailing market rates in the relevant community' . . . [to] produce[] an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue*, 559 U.S. at 551 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

The second methodology, set forth by the Second Circuit in *Arbor Hill*, rejects the lodestar approach in favor of a multifactor analysis aimed at determining the "reasonable hourly rate" and a "presumptively reasonable fee." 522 F.3d 182, 190 (2d Cir. 2008). These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions;
> (3) the level of skill required to perform the legal service properly; (4) the

4

preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

To determine the amount of a prevailing party's fee award, the court thus begins by calculating the "lodestar": "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). Calculation of the "lodestar" creates a "presumptively reasonable fee," and, absent "extraordinary circumstances," the court must calculate the lodestar figure "as a starting point." *Id.* The court may then adjust the lodestar amount, factoring in the *Arbor Hill* considerations. Finally, the fee applicant must "submit appropriate documentation to meet 'the burden of establishing entitlement to an award.'" *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

### A.   Reasonable Attorney Hourly Rate

As a preliminary matter, the court addresses Plaintiffs' argument regarding requests for admissions contained in Plaintiffs' Motion to Compel. Plaintiffs argue that because Defendant did not respond to the Motion to Compel (Doc. 12)—which sought admissions that Plaintiffs' counsel's rate was reasonable—Defendant has conceded the reasonableness of the rates. (Doc. 28 at 2–3.) But that Motion to Compel was denied without prejudice because it did not follow the requirements of the local rules for the Western District of New York. (Doc. 13.) Defendant should not be punished for declining

5

to respond to a defective motion. Separately, even if Defendant *had* made this admission, the court would not be absolved of its duty to independently analyze the reasonableness of the requested fee. *See, e.g., J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, No. 03 Civ. 1548(GBD)(AJP), 2008 WL 4613752, at *13 (S.D.N.Y. Oct. 17, 2008) (even where the parties agree on the fee amount, a court "may only award such fees if it is reasonable to do so."). Accordingly, Defendant's failure to respond within 30 days to the Motion to Compel does not constitute an admission.

"[D]etermination of a reasonable hourly rate 'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'" *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (quoting *Farbotko v. Clinton Cnty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005)). This inquiry may "include judicial notice of the rates awarded in prior cases." *Id.* There is a presumption in favor of the reasonableness of hourly rates usually employed in the district in which the case is heard. *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174–75 (2d Cir. 2009). Thus, the court must consider the prevailing market rate in the Western District of New York for "similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 896 n. 11.

Attorney Hilton "has represented over a hundred plaintiffs in FDCPA cases." (Doc. 19-1 ¶ 13.) He has been admitted to practice law for five years. (*Id.* ¶ 8.) Attorney Hilton's requested rate of $300 per hour is a reasonable rate for FDCPA work by FDCPA attorneys in the Western District of New York with similar levels of experience. *See, e.g., Welch v. PDL Recovery Grp., LLC*, No. 15-CV-512, 2019 WL 4887595, at *3 (W.D.N.Y. Oct. 3, 2019) (finding $300 per hour a reasonable rate for an experienced FDCPA attorney who has "represented hundreds of

6

consumers in FDCPA cases"); *Godson v. Eltman, Eltman & Cooper, P.C.*, No. 1:11-CV-764 EAW, 2018 WL 5263071, at *16 (W.D.N.Y. Oct. 23, 2018) (an FDCPA class action with "unique" issues made $350–$375 per hour billing rate for partners reasonable, but "review of recent FDCPA cases decided in this District suggests that a reasonable hourly rate for attorney's fees ranges from about $200 to $300 per hour."); *Hallmark v. Cohen & Slamowitz, LLP*, 378 F. Supp. 3d 222, 228 (W.D.N.Y. 2019) (awarding "experienced" attorney who had been handling FDCPA cases for 9 years $300 per hour).

In addition to the consistency of Attorney Hilton's requested rate with the prevailing rates FDCPA attorneys of similar experience in the District, the *Arbor Hill* factors support a finding that Attorney Hilton's requested rate is reasonable. The attorney's customary hourly rate—awarded in other FDCPA cases resolved by default judgment—hovers around $300. *See, e.g., Lepski v. Bayside Cap. Servs., LLC*, No. 19-CV-1677S, 2020 WL 4192245, at *4 (W.D.N.Y. July 21, 2020) (awarding Attorney Hilton $270 for his time on a case ending in default judgment); *Faulkner v. Eastpoint Recovery Grp., Inc.*, No. 19-CV-1262S, 2020 WL 7711278, at *2 (W.D.N.Y. Dec. 29, 2020) (finding Mr. Hilton's $300 per hour hourly rate reasonable given his experience in litigating FDCPA matters); *Hernandez v. Coastal Cap. Processing LLC*, No. 1:19-cv-1220, ECF Nos. 18, 19 (W.D.N.Y. Jun. 10, 2021) (awarding $300 per hour to Attorney Hilton for default judgment). Attorney Hilton has obtained favorable results for the two Plaintiffs. His experience, reputation, and ability in litigating FDCPA cases have been recognized by other courts and are not challenged. Although the complexity and time commitment of this case is unexceptional given that default judgment has been entered for two of the three Plaintiffs, the court sees no reason to deny Attorney Hilton the rate he received in other FDCPA cases likewise resolved by default judgment. Based on the foregoing, Attorney

Hilton's $300 hourly rate is reasonable given his experience, customary rate, the prevailing rate of similar attorneys in this district, and the *Arbor Hill* factors.

### B. Associate, Law Clerk, and Paralegal Rates

Defendant does not challenge the reasonableness of requested billing rates of the associates, law clerks, or paralegals. The hourly billing rates of associates Taylor Hutta and Matthew Stewart ($180), law student clerks Eliza Bauler-O'Grady and Regina Mendicino ($110), and paralegal Rachel Clark ($50) are consistent with prevailing rates for others of similar experience in the District. *See, e.g., Metzgar v. U.A. Plumbers and Steamfitters Loc. No. 22 Pension Fund*, No. 13-CV-85V(F), 2019 WL 1466969, at *3 (W.D.N.Y. Apr. 3, 2019) (approving associate hourly rate of $200); *Lepski*, 2020 WL 4192245, at *4 ($110 hourly rate for law student interns is appropriate); *Buffalo Trans., Inc. v. Frezer Bezu*, No. 16CV1032V, 2020 WL 1695556, at *5 (W.D.N.Y. Feb. 19, 2020) (approving paralegal hourly rate of $110). The court thus finds these hourly billing rates to be reasonable.

### II. Objections to Time Entries

Having determined that the requested hourly billing rates of Plaintiffs' counsel and legal staff are reasonable, the court turns to Defendant's objections to various time entries. Defendant challenges Plaintiffs' counsel's billing for "intraoffice communications" and "clerical tasks," but does not identify which line items fall within these categories. (Doc. 27 ¶¶ 10–11.) Defendant also objects to Plaintiffs' request "to be awarded fees for fighting about fees" because this award would create "an incentive to be stubborn about seeking more than a reasonable fee." (*Id.* ¶ 13.) Finally, Defendant seeks to exclude any award for attorney time spent to prepare Plaintiffs' Motion to Compel, which was denied for failure to follow local rule. (*Id.* ¶ 12.)

## A.   Clerical Work and Intra-Office Communications

A court may discount the total number of billed hours if the billing entries are vague, duplicative, excessive, or absent. *See De La Paz*, 2013 WL 6184425, at *13–14 (discounting requested hours where attorneys provided no explanations for what work was performed in several billing entries, and where billing descriptions were vague); *United States Football League v. Nat'l Football League*, 887 F.2d 408, 415 (2d Cir. 1989) (affirming the reduction of billed hours by 10% for vagueness in time entries). A court may also, in its discretion, reduce an award for attorney's fees if the attorney bills for non-legal clerical work. *Grant v. City of Syracuse*, 357 F. Supp. 3d 180, 203 (N.D.N.Y. 2019) ("Clerical tasks such as organizing case files and preparing documents for mailing are not compensable."). The same is true for attorney time spent filing legal documents on CM/ECF, though paralegals may generally bill for this activity. *Agudelo v. E & D LLC*, No. 12 CV 960(HB), 2013 WL 1401887, at *3 (S.D.N.Y. Apr. 4, 2013) ("Noncompensable clerical work includes downloading documents, transmitting correspondence, and filing.") However, "intra-office communications," may be billed as legal work because "[t]he practice of law is not a solitary endeavor," and communications among attorneys, law clerks, and paralegals "are essential to the proper representation of a client and are properly billed." *A.B. v. New York City Dep't of Educ.*, No. 1:20-cv-03129 (SDA), 2021 WL 951928, at *9 (S.D.N.Y. Mar. 13, 2021).

Here, the court finds Attorney Hilton's billing records to be detailed, specific, non-repetitive, and proportional in time to the described activities. The limited time billed for intra-office communications are legal in nature and reimbursable. (*See e.g.*, Doc. 21-1 at 2 ("10/14/2019 – MS – Misc. – Email to J. Hilton re: complaint" for .1 hours).) The lodestar claim

9

was sufficiently documented and consistent with attorney's fees allowed in similar cases. The court will award the lodestar amount in full together with other costs.

The court has also considered the *Arbor Hill* factors. These neither increase nor decrease the lodestar amount. The time and labor required was not great, and two out of the three claims resolved expeditiously. Any work involving the FDCPA requires skill and experience to identify and prove the relatively technical violations of the statute. The FDCPA is Mr. Hilton's area of expertise so there is no assertion that he was precluded from other employment. The court has already discussed his customary hourly rate of $300 and found that it is within the range of hourly rates for this type of work in the Buffalo region. The fee is neither fixed nor contingent. There were no time limitations imposed by the client or anyone else. The case involved relatively small recoveries for two out of the three Plaintiffs. These results were good—both for the Plaintiffs whose actual injuries were minor—and for society which benefits from the enforcement of the FDCPA through litigation of this type. Mr. Hilton is a relatively new attorney with five years of experience. This case is neither unusually desirable nor undesirable. The court knows little about the length of the relationship with the clients. FDCPA awards are frequently relatively small and, as here, overshadowed by the claim for attorney's fees. The small awards reflect the difficulty of proving that the individual plaintiffs suffered any economic or personal loss due to the violation. The attorney's fees reflect the time and expense of filing a lawsuit and engaging in the motion practice required to reach a point at which settlement was possible.

**B.     Award of Fees for Litigating Fees**

Defendant argues, without support, that Plaintiffs' counsel should not be awarded legal fees for time spent "fighting about fees." (Doc. 27 ¶ 13.) This is not the law. Recognizing that a "request for attorney's fees should not result in a second major litigation," *Buckhannon Bd. &*

*Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 609 (2001), "a prevailing plaintiff is clearly entitled to attorneys' fees incurred in litigating motions for attorneys' fees." *Diaz v. Paragon Motors of Woodside, Inc.*, No. CV-03-6466 (CPS) (RML), 2008 WL 2004001, at *6 (E.D.N.Y. May 7, 2008) (citing *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979) (stating that "time reasonably spent by plaintiff's attorneys in establishing their fee would be compensable")). Plaintiff is therefore entitled to collect fees for reasonable time spent litigating the present motion for attorney's fees.

### C.  Attorney's Fees Connected to Plaintiffs' Unsuccessful Motion to Compel

Defendant moves to deduct any legal fees incurred in connection with Plaintiffs' motion to compel which was denied without prejudice on July 1, 2021. The law in the Second Circuit is clear that a plaintiff may recover attorney's fees for "hours spent on unsuccessful claims . . . if the claims are inextricably intertwined and involve a common core of facts." *Reiter v. Metro. Transp. Auth. of the State of N.Y.*, No. 01 Civ. 2762(GWG), 2007 WL 2775144, at *13 (S.D.N.Y. Sept. 25, 2007) (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)). The same rule applies for unsuccessful motions; a "court should not disallow fees for every motion that a prevailing party did not win," so long as the unsuccessful motion was not unreasonable. *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 538 (S.D.N.Y. 2008) (noting that counsel should not be compensated for time spent on motions that were never filed; motions that were unreasonable or had little chance of success; and submissions that directly violate court orders).

The claims raised in Plaintiffs' unsuccessful motion to compel shared a "common core of facts" with claims raised elsewhere in the lawsuit. The entirety of Plaintiffs' claims stem from Defendant's attempts to collect debts allegedly owed by Plaintiffs. The discovery sought in the

11

motion to compel were necessarily intertwined with the allegations set forth by Plaintiffs in their Complaint alleging violations of the FDCPA. Plaintiff's Motion to Compel was unsuccessful only for procedural reasons and was denied without prejudice, indicating the motion would not be entirely without merit once its flaws were cured. Although the court denied the motion on the basis that it did not include evidence of "sincere attempts to resolve the discovery dispute have been made," as required by the local rules in the Western District of New York, Ms. Wilson accepted a Rule 68 offer of judgment shortly after the motion was denied, obviating the need for Plaintiffs' counsel to cure the motion. (*See* Docs. 13, 15.) Plaintiffs' attorney's fees will not be discounted for the time spent in connection with the ultimately unsuccessful Motion to Compel.

### D.   Lodestar Calculation

Having thus concluded that Plaintiffs' counsel's hourly billing rate is reasonable, and that the number of billed hours in this case was reasonably expended on the litigation in this case, the court turns to the final "lodestar" calculation. *Top Ridge Invs., LLC v. Anichini, Inc.*, No. 5:16-cv-76, 2018 WL 4629242, at *2 (D. Vt. Sept. 27, 2018). Plaintiffs' counsel billed 21.3 hours to resolve the FDCPA claims for Ms. McPhaul and Ms. Wilson, plus 3.6 hours to respond to Defendant's opposition. (Doc. 21-1 at 4; Doc. 28 at 11–12.) Multiplied by the respective attorney, law clerk, and paralegal hourly billing rates, the total lodestar amount is $5,093. As discussed above, none of the *Arbor Hill* factors counsel toward altering this amount. Accordingly, the reimbursable attorney's fees in this case totals $5,093.

Having settled the amount of attorney's fees, the court finally addresses Defendant's argument seeking the award of attorney's fees be prorated as between each of the three Plaintiffs.

### III.     Prorated Attorney's Fees for Multiple Plaintiffs

Two of the three Plaintiffs in this case have accepted settlement offers from Defendant. One, Lawrence Kelso, has declined. Plaintiffs' counsel removed any time charges that relate solely to Mr. Kelso's claim from the lodestar claim. The remaining charges either related to all three claims or to the individual claims of the two settling Plaintiffs. In addition, costs such as the filing fee or service expenses relate to all three claims. Defendant seeks to pay only two-thirds of the fees and costs, reserving judgment on the remainder until Mr. Kelso's claim is resolved.

The court declines to prorate the attorney's fees and costs in this manner. The critical issue for the Defendant is that it not pay *twice* for any time charged or out-of-pocket cost. That will not happen because Mr. Hilton's time charges and the related costs are all detailed in his lodestar calculation. Once paid, he cannot submit these charges again without crediting Defendant for its previous payment. Since all the work and all the costs reflected in the lodestar calculation were necessary to resolve the two settling Plaintiffs' claims, it is appropriate to order payment in full for these charges now. In the event that Mr. Kelso also obtains a settlement or judgment, any award to him of attorney's fees will not include the fees already paid pursuant to this order. That procedure will not trouble Mr. Kelso because the fee award reflects amounts due to his attorney, not him. It will not trouble the Defendant either, because the Defendant is only paying once for reasonable fees and costs assessed against it.

## Conclusion

Plaintiffs' Motions for Attorney's Fees by Cameron Wilson and Penny McPhaul (Docs. 19, 25) are GRANTED.

The sums of **$5,093** in attorney's fees and **$460** in costs shall make up the recovery awarded to Ms. McPhaul and Ms. Wilson in the final judgment order which will issue following the resolution of Plaintiff Lawrence Kelso's claim.

Dated this 22nd day of February, 2022.

Geoffrey W. Crawford, Judge
United States District Court